UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| MARTHA JENNIFER CAMP, ADAM CAMP, WILLIAM E. THOMPSON, AND JUANITA THOMPSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>              Plaintiffs,<br><br>   vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, HUNT MH PROPERTY MANAGEMENT, LLC,  DOE DEFENDANTS 1-20,<br><br>        Defendants. | **CIV. NO. 24-00003 LEK-KJM** |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS COMPLAINT FILED NOVEMBER 17, 2023**

        Before the Court is Defendants Ohana Military Communities, LLC ("Ohana") and Hunt MH Property Management, LLC's ("Hunt" and collectively, "Defendants") Motion to Dismiss Plaintiffs' Complaint Filed November 17, 2023 ("Motion"), filed January 31, 2024. [Dkt. no. 12.] Plaintiffs Martha Jennifer Camp, Adam Camp, William E. Thompson, and Juanita Thompson ("Plaintiffs"), individually and on behalf of a putative class of similarly situated persons, filed their memorandum in opposition on March 29, 2024, and Defendants filed their reply on April 5, 2024. [Dkt. nos. 19, 20.] This matter came on for hearing on June 14, 2024. For the reasons set forth below, Defendants' Motion is: granted insofar as Counts II and III, and

the portion of Count V alleging an unfair or deceptive trade or practice ("UDAP") claim are dismissed with prejudice; and granted in part and denied in part insofar as the portion of Count V alleging an unfair methods of competition ("UMOC") claim is dismissed without prejudice; and denied insofar as Plaintiffs are not foreclosed from pursuing medical monitoring damages.

## **BACKGROUND**

The Complaint was filed in the State of Hawai`i First Circuit Court ("state trial court") on November 17, 2023, and the case was removed on January 3, 2024. [Defendants Ohana Military Communities, LLC and Hunt MH Property Management, LLC's Notice of Removal ("Notice of Removal"), filed 1/3/24 (dkt. no. 1), Declaration of Randall C. Whattoff, Exh. 1 (state trial court docket sheet and filings) at PageID.38-71 ("Complaint").]

Plaintiffs allege they lease residential housing in Honolulu that is owned, operated, managed and/or leased by Ohana. [Id. at ¶¶ 5-8.] Plaintiffs allege Defendants acquired contaminated water from the United States Navy-operated water system following fuel spills at the Red Hill Bulk Fuel Storage Facility ("Red Hill Facility"), which Defendants delivered and sold to Plaintiffs. [Id. at ¶ 4.] Plaintiffs allege they have been constructively evicted from their homes, had personal property contaminated and ruined, and suffered physical harm

2

from exposure to contaminated water. [Id.] Plaintiffs seek to
represent a proposed class of persons:

> who, on or after November 20, 2021, reside or
> have resided in a housing unit entitled to
> receive uncontaminated potable water sold or
> distributed by Defendants Ohana and/or by Hunt in
> housing units owned, leased or operated by Ohana
> and who, for some period of time since
> November 20, 2021, did not receive such
> uncontaminated potable water.

[Id. at ¶ 15.]

Plaintiffs allege Defendants had knowledge of the risk
of water contamination, did not warn Plaintiffs of this risk
prior to the November 2021 fuel spill, and were unreasonably
slow to warn consumers after the November 2021 fuel spill. [Id.
at ¶ 40.] Plaintiffs were also subject to a lease termination
charge if they elected to terminate their leases with Defendants
prior to the end of the lease term. [Id. at ¶¶ 45, 47.]

Plaintiffs allege the following claims: negligence
("Count I"); strict liability (Count II"); medical monitoring
("Count III"); private nuisance ("Count IV"); a UDAP claim and
UMOC claim in violation of the Hawai`i Revised Statutes
Sections 480-2 ("Count V"); breach of the implied warranty of
habitability ("Count VI"); trespass ("Count VII"); breach of
contract ("Count VIII"); and violation of Hawai`i Revised
Statutes Chapter 521, Landlord Tenant Code ("Count IX"). [Id. at
¶¶ 52-117.] Plaintiffs seek: general, special, treble,

3

consequential, and punitive damages; provision of a medical monitoring program; attorneys' fees and costs; disgorgement of profits; prejudgment interest; and preliminary and permanent injunctive relief requiring Defendants to warn existing tenants of known water contamination in units, cease collecting rent from existing tenants while the water remains contaminated, cease enforcing the Early Move-Out and Reletting Charge provisions in their leases unless certain circumstances are met, deem void all purported waivers of liability in favor of Defendants, and cease entering into any new leases for residential property until they adequately address the water contamination. [Id. at pgs. 31-32.]

## DISCUSSION

Defendants argue Counts II, III, and V should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Motion at 2; Motion, Mem. in Supp. at 2.] Defendants challenge Counts II, III, and V for failure to state a claim pursuant to Rule 12(b)(6). Additionally, Defendants challenge Counts III and V for lack of standing. Defendants' challenge to Count V alleges lack of statutory standing, which courts evaluate under a Rule 12(b)(6) standard. See Cetacean Cmty. v. Bush, 386 F.3d 1169, 1175 (9th Cir. 2004) (stating that, "[i]f a plaintiff has suffered sufficient injury to satisfy the jurisdictional requirement of

Article III but Congress has not granted statutory standing, that plaintiff cannot state a claim upon which relief can be granted" and, "[i]n that event, the suit should be dismissed under Rule 12(b)(6)" (citations omitted)); Cottonwood Env't L. Ctr. v. Yellowstone Mountain Club, LLC, Case No. CV-23-26-BU-BMM, 2023 WL 7018748, at *4 (D. Mont. Oct. 25, 2023) (declining to consider an affidavit in evaluating statutory standing under Rule 12(b)(6)).

Defendants' challenge to Count III is the only challenge brought pursuant to Rule 12(b)(1), however, it is inappropriate to rule on at this stage of the litigation as explained below. Therefore, the Court analyzes the entirety of the Motion pursuant to Rule 12(b)(6).

In evaluating a motion brought under Rule 12(b)(6), a court may not consider materials outside of the pleadings unless the materials are "incorporated by reference" or subject to judicial notice. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018). Plaintiffs attach the lease agreement, dated October 4, 2016, between Ohana and William E. Thompson and Juanita Thompson to the memorandum in opposition ("Thompson Lease Agreement"). [Mem. in Opp., Declaration of James J. Bickerton ("Bickerton Decl."), Exh. 1 (Thompson Lease Agreement).] The Court finds that the Thompson Lease Agreement is incorporated by reference into the Complaint, because the

Complaint refers to the lease agreements between Plaintiffs and
Ohana extensively and these agreements form the basis for many
of Plaintiffs' claims. See, e.g., Complaint at ¶¶ 16, 38-39, 44-
45, 47-48, 51.

Plaintiffs also attach two declarations to their
memorandum in opposition: the Declaration of Martha Jennifer
Camp ("Camp Declaration") and the Declaration of Juanita J.
Thompson ("Thompson Declaration"). See dkt. no. 19-1 (Camp
Decl.); dkt. no. 19-2 (Thompson Decl.). Both declarations
describe the impact of the supply of contaminated water to their
respective households, including items that were disposed of and
purchases that were made as a result of the contaminated water.
While the Complaint includes cursory allegations of damage to or
loss of personal property, see Complaint at ¶ 4 (stating
Plaintiffs have "had personal property contaminated and
ruined"); see also id. at ¶¶ 45, 57, 116, the Complaint does not
include allegations of the purchase of replacement household
items. Instead, these declarations appear to amount to an
attempt to amend the Complaint through the declarations.
Plaintiffs seek to rely on the declarations solely for the
statements about the purchases Plaintiffs made due to the
contaminated water. See Mem. in Opp. at 23. Because the
Complaint does not "necessarily rel[y]" on the declarations, and
the declarations do not form the basis for Plaintiffs' claims,

the declarations cannot be incorporated by reference. See Coto
Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010);
see also Khoja, 899 F.3d at 1002. Nor are the declarations
subject to judicial notice; judicial notice is proper only for
facts not subject to reasonable dispute. See Fed. R. Evid.
201(b). First, the declaration as a whole is not "a fact that is
not subject to reasonable dispute." Further, the statements made
in the declarations are subject to dispute. Therefore, the Court
will not consider the Camp Declaration or the Thompson
Declaration in ruling on the Motion. The Court now turns to the
substance of the Motion.

## I.   **Count II: Strict Liability**

        Defendants argue Count II fails as a matter of law
because landlords cannot be held liable under Hawai`i law for
defective products within leased premises. [Motion, Mem. in
Supp. at 4-9.] Plaintiffs counter that water is a "product"
under Restatement (Second) of Torts § 402A ("Restatement Section
402A") and Hawai`i law, and because Defendants put this product
on the market, Defendants can be held strictly liable. [Mem. in
Opp. at 4-9.] The Court agrees with Defendants: under Hawai`i
law, landlords cannot be held liable under a strict liability
theory for their role in providing water to their tenants.

        The Hawai`i Supreme Court adopted the rule for strict
products liability in Stewart v. Budget Rent-A-Car Corp.:

> [W]e adopt the rule that one who sells or leases
> a defective product which is dangerous to the
> user or consumer or to his property is subject to
> liability for physical harm caused by the
> defective product to the ultimate user or
> consumer, or to his property, if (a) the seller
> or lessor is engaged in the business of selling
> or leasing such product, and (b) the product is
> expected to and does reach the user or consumer
> without substantial change to its condition after
> it is sold or leased.

52 Haw. 71, 75, 470 P.2d 240, 243 (1970). The supreme court

acknowledged that the above rule is "essentially" the same as

the rule in Restatement Section 402A.[1] <u>Id.</u>

---

[1] Restatement Section 402A provides:

(1)   One who sells any product in a defective
condition unreasonably dangerous to the user or
consumer or to his property is subject to
liability for physical harm thereby caused to the
ultimate user or consumer, or to his property, if

> (a)   the seller is engaged in the business
> of selling such a product, and

> (b)   it is expected to and does reach the
> user or consumer without substantial change
> in the condition in which it is sold.

(2)   The rule stated in Subsection (1) applies
although

> (a)   the seller has exercised all possible
> care in the preparation and sale of his
> product, and

> (b)   the user or consumer has not bought the
> product from or entered into any contractual
> relation with the seller.

The Thompson Lease Agreement states: "Rent includes water, sewer, and gas utility services." [Bickerton Decl., Exh. 1 at PageID.238.] The lease further states: "Owner [Ohana] shall be responsible for the payment of water . . . ." [Id. at 5.] Assuming without deciding that Ohana "sells" water to Plaintiffs as part of Plaintiffs' rental agreements, the Court considers whether water provided by a landlord as a utility in a residential lease constitutes a "product" for purposes of strict liability under Hawai`i law.

Under Hawai`i law, it is clear that a physical object such as a towel rack or shower door within a building is not a "product" for purposes of strict liability. See Bidar v. Amfac, Inc., 66 Haw. 547, 554-56, 669 P.2d 154, 160-61 (1983) (affirming dismissal of plaintiff's strict product liability claim to recover injuries suffered while a guest at defendant's hotel from a bathroom towel rack tearing loose from the wall, because a towel rack is a portion of a premise, not a "product" under strict liability theory); Armstrong v. Cione, 69 Haw. 176, 183-85, 738 P.2d 79, 83-85 (1987) (concluding a shower door in a rented apartment was not a product for purposes of strict liability analysis, in part because the shower door was "an integral part of the structure of the apartment building").

However, there are no Hawai`i Supreme Court cases that consider whether a utility, such as water, qualifies as a

9

"product" for purposes of strict liability doctrine. Therefore, the Court must predict whether the Hawai`i Supreme Court would hold a landlord liable for the provision of water in a lease under a strict liability theory. See Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011) ("When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." (citations and quotation marks omitted)).

The Court proceeds to analyze relevant Hawai`i state court decisions.

> The Hawaii Supreme Court first approached the issue of defining "product" for the purposes of strict liability in the case of Kaneko v. Hilo Coast Processing, 65 Haw. 447, 452–58, 654 P.2d 343 (1982). There the court held that "a product should be determined on a case-by-case basis with that determination guided by the applicable case law, the public policy considerations underlying strict liability, the comments to the Restatement (Second) of Torts, and the Model Uniform Products Liability Act." Id. at 455, 654 P.2d 343.

Kennedy v. Vacation Internationale, Ltd., 841 F. Supp. 986, 989 (D. Hawai`i 1994).

Following Kaneko, the supreme court decided Armstrong, in which the supreme court affirmed the circuit court's determination that a shower door that injured the tenant was not

10

a "product" for purposes of a strict liability cause of action. 69 Haw. at 183, 738 P.2d at 83. In reaching its decision, the supreme court emphasized the policy concerns that weigh against finding a landlord liable: traditional negligence remedies are available to tenants; unlike sellers of other products, landlords cannot prevent a defect by taking greater care in the manufacture of the product; and landlords do not have expertise to correct the condition. See id. at 185, 738 P.2d at 84 (quoting Dwyer v. Skyline Apartments, Inc., 123 N.J. Super. 48, 55, 301 A.2d 463, 467, aff'g obiter dictum, 63 N.J. 577, 311 A.2d 1 (1973) (per curiam)). Rather, a landlord may be expected to notify the tenant at the beginning of a lease of dangerous defects known to the landlord, and to repair conditions during the lease. Id. at 184-85, 738 P.2d at 84-85. The same policy considerations are relevant here: Plaintiffs have other avenues of redress, and Defendants could not have prevented the defect by taking greater care in the manufacture of the product.

After Armstrong, the supreme court emphasized similar policy considerations in Leong v. Sears Roebuck & Company, 89 Hawai`i 204, 970 P.2d 972 (1998). Leong concerned a child's injury from an escalator at Sears. The plaintiff alleged Sears and the escalator manufacturers were liable under a theory of products liability for damages from the incident. Id. at 204, 970 P.2d at 972. The supreme court held that the escalator was

11

not a product for purposes of the claim against Sears, but was a product for purposes of the claim against the manufacturers of the component parts of the escalator. The supreme court reasoned that the plaintiff could pursue other remedies against Sears, Sears could not adjust the costs up the chain of distribution, nor could Sears take greater care in the manufacture or assembly of the escalator. Id. at 211, 970 P.2d at 979. On the other hand, the defendant manufacturer and defendant distributor were better positioned to bear the costs of defective component parts, and through application of the strict liability doctrine, would be incentivized to prevent future defects. Id.

Finally, the Court notes the Circuit Court of the First Circuit, State of Hawai`i in a similar case allowed a similar strict liability claim and a similar UDAP claim to proceed, and dismissed with prejudice a similar claim for medical monitoring. See Lozano et al. v. CP IV Waterfront LLC, Civil No. 1CCV-22-0000019 (KTM) (Haw. Cir. Ct.), Order Granting in Part and Denying in Part Defendant CP IV Waterfront, LLC's Motion for Partial Dismissal of Plaintiffs' First Amended Complaint, filed 9/19/23 (dkt. no. 82) ("Lozano Order").[2] Generally the state trial court order would be persuasive. See Engle v. Liberty Mut. Fire Ins. Co., 402 F. Supp. 2d 1157, 1161

---

[2] Plaintiffs provided a copy of the Lozano order as Exhibit 2 to the Bickerton Declaration.

(D. Hawai`i 2005) (some citations omitted) (citing <u>Spinner Corp.</u> <u>v. Princeville Dev. Corp.</u>, 849 F.2d 388, 390 (9th Cir. 1988)). However, here, the <u>Lozano Order</u> contains no reasoning, so its persuasive value is limited.

Applying the reasoning of <u>Armstrong</u> and <u>Leong</u> to the instant case, the Court predicts the Hawai`i Supreme Court would not hold the landlord in a residential lease strictly liable for the provision of contaminated water in a residential lease. Defendants can neither adjust the costs up the chain of distribution nor take greater care in providing water to Plaintiffs. Here, as the supreme court noted in <u>Armstrong</u>, "[t]he same economic incentives for creating safer products through an enduring commercial relationship between the manufacturer and its distributors are not present in the case of the residential landlord." <u>Armstrong</u>, 69 Haw. at 185, 738 P.2d at 84 (citations omitted).

Therefore, on that basis, the Court grants the Motion as to Count II, and dismisses Count II. The dismissal of Count II is with prejudice, because it is clear that Count II cannot be saved by amendment. <u>See</u> <u>Hoang v. Bank of Am., N.A.</u>, 910 F.3d 1096, 1102 (9th Cir. 2018).

## II.  <u>Count III: Medical Monitoring</u>

In Count III, Plaintiffs allege that the "significantly increased risks associated with exposure to these

13

hazardous and toxic contaminants, including but not limited to benzene and petrochemical hydrocarbons, make periodic diagnostic medical examinations reasonable and necessary." [Complaint at ¶ 68.] Defendants argue Count III should be dismissed with prejudice because medical monitoring is not an independent tort in Hawai`i, and Plaintiffs fail to sufficiently plead physical injury to warrant medical monitoring damages and therefore lack standing to pursue such damages. [Motion, Mem. in Supp. at 9-13.]

Hawai`i has not recognized an independent cause of action for medical monitoring – indeed, there are no Hawai`i cases discussing medical monitoring. Therefore, the Court must predict if the Hawai`i Supreme Court would recognize medical monitoring as a cause of action.

Through medical monitoring, Plaintiffs "seek to recover the anticipated costs of long-term diagnostic testing necessary to detect latent diseases that may develop as a result of tortious exposure." In re Nat'l Hockey League Players' Concussion Inj. Litig., 327 F.R.D. 245, 259-60 (D. Minn. 2018) (citation and internal quotation marks omitted). Medical monitoring claims "evolved from the realization that widely recognized tort law concepts premised upon a present physical injury are ill-equipped to deal with cases involving latent injury." Id. at 260 (citation and internal quotation marks

14

omitted). Depending on the jurisdiction, medical monitoring may be either an independent cause of action or an equitable remedy. Medical monitoring may be allowed only when there is evidence of physical injury, or without evidence of physical injury. See id.; Bell v. 3M Co., 344 F. Supp. 3d 1207, 1223 (D. Colo. 2018) (outlining state and federal decisions predicting state law finding both that medical monitoring is not a valid cause of action absent present physical injury, and that medical monitoring claims may proceed as an independent cause of action or as a remedy even without present physical injury). There is no particular trend one way or the other apparent in these decisions. See Bell, 344 F. Supp. 3d at 1222-23.

        This district court is reluctant to "articulate a **new** tort principle under Hawai`i law that Hawai`i appellate courts have yet to recognize." Hamilton v. Foreclosure Expeditors/Initiators, LLC, CIVIL NO. 13-00145 DKW-KJM, 2017 WL 5761598, at *9 (D. Hawai`i Nov. 28, 2017) (emphasis in original) (citation omitted); see also Torres v. Goodyear Tire & Rubber Co., 867 F.2d 1234, 1238-39 (9th Cir. 1989) (noting hesitance to extend tort law in the absence of indication from the state's courts or legislature, and certifying question to the Arizona Supreme Court). With the foregoing in mind, and particularly given that no Hawai`i court has recognized an independent cause of action for medical monitoring, the Court declines to

15

recognize a new cause of action under Hawai`i law today. See,
e.g., United Auto. Ins. Co. v. Christensen, Case No. 2:18-cv-
02269-JAD-BNW, 2022 WL 1692798, at *2 (D. Nev. May 25, 2022)
("Because it is simply not the role of federal courts to
recognize causes of action under state law before the state's
own courts do, I decline to overstep the bounds of our
federalist system to do so today." (footnote omitted)).

The Court predicts that the Hawai`i Supreme Court
would not adopt an independent tort for medical monitoring. Cf.
In re Zantac (Ranitidine) Prods. Liab. Litig., 546 F. Supp. 3d
1152, 1167-68 (S.D. Fla. 2021) (declining to recognize a medical
monitoring claim in Montana when only one state trial court case
that was twenty years old and unpublished recognized such a
claim in Montana, and dismissing such claims with prejudice).

However, the Court notes, without deciding, that
Plaintiffs may still be able to recover medical monitoring
damages as a remedy, if Plaintiffs can establish that they are
entitled to such a remedy in connection with one of the
remaining claims. See In re Haw. Fed. Asbestos Cases, 734 F.
Supp. 1563, 1573 (D. Hawai`i 1990) (stating the defendants'
motion for new trial as to special damages would be denied if
the plaintiffs filed a remittitur regarding the cost of the
future medical monitoring, discounted to present value); cf.
Ross v. Stouffer Hotel Co. (Hawai`i) Ltd., 76 Hawai`i 454, 466,

16

879 P.2d 1037, 1049 (1994) ("[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action." (citation omitted)). Because medical monitoring damages as a remedy would flow from a separate cause of action, the Court declines to address whether Plaintiffs possess standing to pursue such damages until a later stage of this case when the causes of actions are more fully developed.

The Motion is granted to the extent that Count III is dismissed as a separate cause of action. The dismissal of Count III is with prejudice, because it is clear that Count III cannot be saved by amendment. The Motion is denied insofar as Plaintiffs are not foreclosed from pursuing medical monitoring damages as a potential remedy.

## III. **Count V**

### A. **Unfair or Deceptive Acts and Practices**

Hawai`i Revised Statutes Section 480-2(a) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." To have standing to bring a claim for unfair or deceptive acts or practices, the plaintiff must be "a consumer, the attorney general or the director of the office of consumer protection." Haw. Rev. Stat. § 480-2(d). Defendants argue Plaintiffs' UDAP claim should be dismissed because Plaintiffs lack standing as a "consumer" to bring such a claim. [Motion,

17

Mem. in Supp. at 14-19.] A "consumer" is defined as "a natural
person who, primarily for personal, family, or household
purposes, purchases, attempts to purchase, or is solicited to
purchase goods or services or who commits money, property, or
services in a personal investment." Haw. Rev. Stat. § 480-1.
Pursuant to Section 480-1, "'[p]urchase' or 'buy' includes
'contract to buy', 'lease', 'contract to lease', 'acquire a
license', and 'contract to acquire a license'."

Plaintiffs contend they are consumers within the
meaning of Chapter 480 because as tenants they contracted for –
by way of their leases – utilities, including potable water.
Thus, Defendants' provision and maintenance of the drinking
water hookup to Plaintiffs' units is a "service," and
Plaintiffs' purchase of water vis-à-vis their rental agreements
is a "product." Finally, Plaintiffs contend the purchase of
replacement household items damaged by toxic water makes
Plaintiffs "consumers" within the meaning of Chapter 480.[3] [Mem.
in Opp. at 12-23.]

Because Hawai`i courts have not decided the issue, the
Court predicts how the Hawai`i Supreme Court would rule. The
Court predicts the Hawai`i Supreme Court would find that a

---

[3] Plaintiffs do not contend they are "consumers" pursuant to
Chapter 480 because they committed money, property or services
into a personal investment. See Mem. in Opp. at 12-23.

18

landlord's provision of water to a tenant as a utility is neither a "good" nor a "service" pursuant to Chapter 480. The Court further concludes that Plaintiffs' argument regarding the purchase of replacement household items fails to confer statutory standing to Plaintiffs.

### 1.  Good

The Court first analyzes whether a landlord's provision of water to a residence constitutes a "good" pursuant to Section 480-1. In Cieri v. Leticia Query Realty, the supreme court held that residences and real estate are not goods under Section 480-1. 80 Hawai`i 54, 66, 905 P.2d 29, 41 (1995). While Cieri involved the sale of real property, not the provision of utilities in a residential lease, see id. at 56, 905 P.2d at 31, its rationale is applicable to the instant case. The supreme court highlighted the notable absence of real estate or residences in Section 2-105 of the Uniform Commercial Code ("UCC"), codified in Hawai`i Revised Statutes Section 490:2-105. See id. at 66, 905 P.2d at 41. Section 490:2-105 provides:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 490:2-107).

Noting the "conspicuous[] absen[ce]" of any reference to real estate or residences in the definition of "goods," the supreme court determined that real estate and residences were not intended to be considered goods for purposes of a UDAP claim. See Cieri, 80 Hawai`i at 66, 905 P.2d at 41; see also Barber v. Ohana Mil. Cmtys., LLC, Civil No. 14-00217 HG-KSC, 2015 WL 2250041, at *5-6 (D. Hawai`i May 12, 2015) (analyzing Cieri).

Plaintiffs argue the reasoning in Cieri is inapplicable because the Landlord-Tenant Code changed the nature of the relationship between landlord and tenant from one of conveyance to a contractual relationship. [Mem. in Opp. at 15-16.] This argument is unavailing. As Defendants correctly point out, see Reply at 10, the Landlord-Tenant Code was enacted in 1972, long before Cieri was decided in 1995. See Haw. Rev. Stat. § 521-2; Cieri, 80 Hawai`i 54, 905 P.2d 29.

Following Cieri, the Intermediate Court of Appeals of Hawai`i ("ICA") has interpreted transactions involving the leases of rental property to not involve "goods" or "services" for purposes of bringing a UDAP claim. See Fernandez v. Mark Dev., Inc., No. 29331, 2011 WL 5089808, at *2 (Haw. Ct. App. Oct. 25, 2011); Takayama v. Zera, No. 27900, 2010 WL 973484, at *5 (Haw. Ct. App. Mar. 18, 2010). Although neither Fernandez nor Takayama considered utilities provided by a landlord to tenants,

both cases indicate that the ICA has applied the reasoning of
Cieri to residential leases.

While Plaintiffs argue they entered into contracts for
the sale of water consistent with the statutory definition of
goods under Section 490:2-105, the Court is not persuaded.
Plaintiffs entered into contracts for the lease of a residence,
which included the provision of water as part of the price of
the monthly rent. See Bickerton Decl., Exh. 1 (Thompson Lease
Agreement) at § 8 ("Owner shall be responsible for the payment
of water . . . utilities[.]")); Complaint at ¶ 38 ("Under the
terms of their residential leases with Defendants, Plaintiffs
agree to pay rent to Defendants for safe and habitable premises,
and further agree in exchange for the goods and services
provided by Defendants under the heading 'utilities,' which
include the provision and sale of potable water, to pay for said
utilities. By operation of law, Defendant Ohana agrees to
provide these premises and to deliver these utilities including
the water, in compliance with all state and local laws,
ordinances, and regulations for health and safety."). Plaintiffs
cite to an out-of-state opinion noting many jurisdictions
consider water suppliers to be sellers of goods under Article II
of the UCC. [Mem. in Opp. at 17.] This argument is unavailing
because Defendants are not akin to an operator of a public water
system or water company, but are landlords. The rental

21

agreements at issue here are fundamentally leases for residences, even though water is provided as part of those leases. Cieri made clear that the legislature intentionally omitted residences from the definition of goods in Section 490:2-105, and thus determined that real estate and residences were not intended to be considered goods for purposes of a UDAP claim.

Accordingly, the Court predicts the Hawai`i Supreme Court would hold that the provision of water in a rental unit is not a "good" under Section 480-1, because the contracts at issue are fundamentally agreements to lease a residence, not to sell a "good."

### 2.   **Service**

The closer question is whether a landlord's provision of water can be considered a service. In Lake v. Ohana Military Communities, LLC, the Court considered whether a landlord's provision of utilities allowed the tenant standing as a consumer pursuant to Chapter 480. CIVIL 16-00555 LEK-KJM, 2017 WL 4563079, at *6-7 (D. Hawai`i Aug. 1, 2017).[4] The Court determined the utilities were incidental to the lease of residences, and that the "fundamental nature of Plaintiffs' agreements was to lease residences, not to purchase the 'services'— i.e.,

---

[4] The Ninth Circuit vacated Lake on other grounds. 14 F.4th 993 (9th Cir. 2021).

'amenities.'" id. at *7. The district court in <u>Barber v. Ohana Military Communities, LLC</u>, also determined that amenities provided as part of the plaintiffs' leases did not qualify as "services" under Chapter 480 for similar reasons. Civil No. 14-00217 HG-KSC, 2015 WL 2250041, at *7-8 (D. Hawai`i May 12, 2015). The district court in <u>Barber</u> noted the ICA found residential leases do not confer standing because they do not involve the purchase of goods or services. <u>Id.</u> at *7 (citing <u>Takayama</u>, 2010 WL 973484, at *5 (Haw. App. Mar. 18, 2010)). Further, the district court analyzed a California Court of Appeals case:

> The California Court of Appeals has directly examined Plaintiffs' argument regarding amenities that are included as a part of a tenant's lease. <u>Freeman v. United Dominion Realty Trust, Inc.</u>, [No. E042905, 2008 WL 1838373 (Cal. Ct. App. April 25, 2008), <em>as modified</em> (May 6, 2008)].
>
> In <u>Freeman</u>, the plaintiff argued that he had standing to bring a claim pursuant to the California consumer protection statute because his residential lease included an array of services include [sic] maintenance, lawn services, and a swimming pool. The California appeals court held that the services included in the lease "were merely incidents of the landlord-tenant relations; they did not change the fundamental nature of the lease." <u>Id.</u> at *10. The California Court of Appeal held that the services provided by the landlord as part of the lease did not provide the plaintiff with standing as a "consumer" to sue pursuant to the California Consumer Legal Remedies Act. <u>Id.</u>

id. at *7-8 ; see also Heckart v. A-1 Self Storage, Inc., 196
Cal. Rptr. 3d 504, 512 (Cal. Ct. App. 2015) (finding that the
fact the storage facility "agreed to provide 'security and
availability' services was "ancillary to the main purpose of the
Rental Agreement, which was lease of storage space, and does not
transform the agreement into one for the sale or lease of
'services' within the meaning of the CLRA [California Consumer
Legal Remedies Act]").[5]

While Plaintiffs disagree with Lake and Barber, and
assert that Lake and Barber do not specifically address whether
a landlord's provision of utilities can confer tenant's
standing, see Mem. in Opp. at 18-19, this is incorrect. As noted
above, Barber clearly analyzes the landlord's provision of
utilities specifically, and this Court in Lake agreed with the
analysis in Barber. See Lake, 2017 WL 4563079, at *7. Nor is the
Court persuaded by Plaintiffs' citation to out-of-jurisdiction
cases to demonstrate that tenants in some states may avail
themselves of both landlord-tenant code provisions as well as
consumer protection statutes. See Mem. in Opp. at 20-22 & nn.17-
26. None of the cases cited by Plaintiffs addressed a landlord's

---

[5] Heckart was superseded and affirmed by the California
Supreme Court. 4 Cal. 5th 749 (2018).

provision of utilities through a lease.[6] Only one case addressed
standing, and did so in an entirely different context. See
People ex rel. Fahner v. Hedrich, 438 N.E.2d 924, 926-28 (1982)
(addressing the standing of the government, where mobile home
tenants paid service fees separate from rent).

     While cognizant that Hawai`i consumer law is
interpreted broadly to maximize consumer protection, see State
ex rel. Shikada v. Bristol-Myers Squibb Co., 152 Hawai`i 418,
446, 526 P.3d 395, 423 (2023), the Court agrees with Lake,
Barber, Freeman, and Heckart. The provision of water cannot be
properly viewed in isolation from the underlying lease. The
fundamental nature of a rental agreement is to lease a
residence, not to purchase the service of water delivery to a
tenant's residence. Even accepting all of Plaintiffs' factual

---

     [6] See Pennsylvania v. Monumental Props., Inc., 329 A.2d 812,
814 (Pa. 1974) (concerning printed form leases); Bisson v. Ward,
628 A.2d 1256, 1257 (Vt. 1993) (concerning landlord's refusal to
make repairs); People ex rel. Fahner v. Hedrich, 438 N.E.2d 924,
928-29 (Ill. App. Ct. 1982) (concerning fees incurred upon the
sale of a mobile home); Commonwealth v. DeCotis, 316 N.E.2d 748,
750 (Mass. 1974) (concerning fees upon the resale of mobile
homes); Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.,
792 F. Supp. 1566, 1569 (S.D. Fla. 1992) (concerning physical
condition of units); Anast v. Commonwealth Apartments, 956 F.
Supp. 792, 795 (N.D. Ill. 1997) (concerning possession of
premises); Hernandez v. Stabach, 193 Cal. Rptr. 350, 351 (1983)
(concerning un-inhabitable premises); Hardy v. Griffin, 569 A.2d
49, 50 (Conn. Super. Ct. 1989) (concerning lead paint),
superseded by statute on other grounds as recognized in Gore v.
People's Sav. Bank, 665 A.2d 1341 (Conn. 1995); Conaway v.
Prestia, 464 A.2d 847, 849 (Conn. 1983) (concerning the failure
to secure certificates of occupancy while collecting rent).

allegations as true, see Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009), the Court predicts the Hawai`i Supreme Court would find
that Plaintiffs have not purchased, attempted to purchase, and
were not solicited to purchase "services" within the meaning of
Chapter 480.

### 3. **Purchase of Replacement Household Items**

Finally, Plaintiffs argue they purchased replacement
household goods due to the contaminated water, which makes
Plaintiffs consumers under Chapter 480. [Mem. in Opp. at 22-23.]
As the Court explained, no such purchase allegations are raised
in the Complaint. Plaintiffs instead rely on the Camp
Declaration and the Thompson Declaration for factual support.
Because the Court cannot consider these declarations,
Plaintiffs' argument fails.

However, even if the Court considered Plaintiffs'
argument regarding their household purchases, it has no basis in
law. Plaintiffs cite to Flores v. Rawlings, 117 Hawai`i 153,
164, 177 P.3d 341, 352 (2008), to support their argument. [Mem.
in Opp. at 23.] Plaintiffs cite to the section of Flores
summarizing the plaintiffs' argument, not the holding. This is
unacceptable. Flores does not support Plaintiffs' argument. The
supreme court in Flores held that plaintiffs with consumer debt
were "consumers" and could sue collection agencies. The court
analyzed the underlying agreement at issue, the loan agreement,

26

and found that the plaintiffs were consumers in relation to that
agreement. <u>Id.</u> at 165-66, 177 P.3d at 353-54. Here, the
underlying agreements at issue are the rental agreements between
Plaintiffs and Defendants, not the purchase of replacement
household goods. Thus, <u>Flores</u> is inapposite. Plaintiffs'
argument regarding the purchase of replacement household goods
fails, and Plaintiffs do not establish statutory standing on
this basis.

### 4. <u>Conclusion</u>

For the foregoing reasons, the Court thus predicts
that the Hawai`i Supreme Court would not hold that Plaintiffs
are "consumers" pursuant to Chapter 480. Therefore, Plaintiffs
lack standing to pursue the portion of Count V alleging a UDAP
claim. The portion of Count V alleging a UDAP claim must be
dismissed. Dismissal is with prejudice, because it is clear that
portion of Count V cannot be saved by amendment.

### B. <u>Unfair Methods of Competition</u>

Defendants contend that to the extent a portion of
Count V alleges a UMOC claim, it should be dismissed because
Plaintiffs fail to sufficiently allege the "nature of
competition" requirement. [Motion, Mem. in Supp. at 20-22.]

"[A]ny person may bring a claim of unfair methods of
competition based upon conduct that could also support a claim
of unfair or deceptive acts or practices as long as the nature

27

of the competition is sufficiently alleged in the complaint."

Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113 Hawai`i 77,

113, 148 P.3d 1179, 1215 (2006).

> To recover under HRS § 480-13(a) for an
> unfair method of competition violation, a
> plaintiff must prove: (1) a violation of HRS
> Chapter 480; (2) an injury to the plaintiff's
> business or property that flows from the
> defendant's conduct that negatively affects
> competition or harms fair competition; and
> (3) proof of damages. Gurrobat v. HTH Corp., 133
> Hawai`i 1, 21, 323 P.3d 792, 812 (2014). The
> second element has two parts. Id. First, a
> plaintiff is required to demonstrate "an injury
> in fact to his or her 'business or property.'"
> Id. Second, a plaintiff is required to show the
> "nature of the competition." Id. This latter
> requirement is met by demonstrating how the
> defendant's conduct negatively affects
> competition or harms fair competition. Id. at 22-
> 23, 323 P.3d at 813-14.

Field v. Nat'l Collegiate Athletic Ass'n, 143 Hawai`i 362, 372–

73, 431 P.3d 735, 745–46 (2018). "Plaintiffs must ultimately

show that their injury necessarily stems from the negative

effect on competition caused by the violation, as opposed to

some pro-competitive or neutral effect of the defendant's

antitrust violation." Soule v. Hilton Worldwide, Inc., 1 F.

Supp. 3d 1084, 1095 (D. Hawai`i 2014) (citing Davis v. Four

Seasons Hotel Ltd., 122 Hawai`i 423, 228 P.3d 303 (2010)).

Courts must "give due consideration to the rules, regulations,

and decisions of the Federal Trade Commission and the federal

courts interpreting section 5(a)(1) of the Federal Trade

Commission Act[,]" in construing Section 480-2. Haw. Rev. Stat.
§ 480-2(b).

Plaintiffs' factual allegations are insufficient to
support a claim that Defendants' failure to disclose the risk
that Plaintiffs' household tap water was contaminated had a
negative effect on competition that harms consumers like
Plaintiffs. Plaintiffs allege: "Defendant Ohana is in
competition with other providers of leased residential housing
in Honolulu and gained an unfair competitive advantage over them
by failing to disclose water contamination or provide
uncontaminated water while charging comparable rents."
[Complaint at ¶ 79.] This allegation, standing alone, is
insufficient.

While a plaintiff may allege a defendant's conduct
negatively affects competition by alleging a defendant's conduct
creates incentives for consumers to purchase defendant's
services, rather than a competitor's, here, Plaintiffs do not
make such allegations. See Gurrobat, 133 Hawai`i at 22, 323 P.3d
at 813 (stating "plaintiffs may prove how a defendant's conduct
negatively affects competition by showing that defendant's
conduct enables the defendant to create incentives for customers
to purchase banquet services from the defendant instead of
competitors"). Instead, Plaintiffs allege that Defendants'
conduct allows Defendants to charge market-rate rents, with the

29

implication that Defendants' rental rates would have been lower
if Defendants had disclosed the water contamination.

      Missing from the allegations is the anticompetitive
effects within that market – how competitors were harmed by
Defendants' alleged actions. "'[O]rdinarily, the factual support
needed to show injury to competition must include proof of the
relevant geographic markets and demonstration of the restraint's
anticompetitive effects within those markets.'" Sunday's Child,
LLC v. Irongate Azrep BW LLC, CIVIL NO. 13-00502 DKW-RLP, 2017
WL 10651861, at *4 (D. Hawai`i Oct. 27, 2017) (quoting Les
Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 508
(9th Cir. 1989) (affirming dismissal for failure to allege
actual detrimental competitive effects)). The Complaint does not
contain allegations of how Defendants' actions restrained
competition by "disrupting 'price setting, resource allocation,
market entry, or output designation'" or other market functions.
See WHIC LLC v. NextGen Lab'ys, Inc., Civ. No. 18-00261 JMS-WRP,
2019 WL 2717769, at *4 (D. Hawai`i June 28, 2019) (some
citations omitted) (quoting Les Shockley Racing, 884 F.2d at
508) (citing Field, Tr. of Estate of Aloha Sports Inc. v. Nat'l
Collegiate Athletic Ass'n, 143 Haw. 362, 375, 431 P.3d 735, 748
(2018) (listing how the defendant's actions negatively affected
competition by "(1) restricting the transfer of ownership of
bowl games contingent upon recertification; (2) leading to lower

prices for the sale of bowl sponsoring agencies because of
uncertainty as to whether a bowl will gain recertification; and
(3) acting as a restriction on output that would result in a
loss of financial benefits to schools and consumers who would
have otherwise participated in a given bowl")). Absent from the
Complaint are allegations outlining the effect of Defendants'
actions on the price or availability of leased housing in the
relevant geographic market, or any other characteristic of a
competitive market.

It is possible that Plaintiffs may be able to allege
facts to plausibly allege Defendants' restraint caused
anticompetitive effects within the relevant market. Therefore,
to the extent that Count V alleges a UMOC claim, it is dismissed
without prejudice and with leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to
Dismiss Plaintiffs' Complaint Filed November 17, 2023, filed
January 31, 2024, is GRANTED IN PART AND DENIED IN PART.
Defendants' Motion is GRANTED insofar as Counts II and III, and
the portion of Count V alleging a UDAP claim are DISMISSED WITH
PREJUDICE. Defendants' Motion is GRANTED IN PART AND DENIED IN
PART insofar as the portion of Count V alleging a UMOC claim is
DISMISSED WITHOUT PREJUDICE. The Motion is DENIED insofar as

31

Plaintiffs are not foreclosed from pursuing medical monitoring damages.

     IT IS SO ORDERED.

     DATED AT HONOLULU, HAWAII, July 30, 2024.



                                     /s/ Leslie E. Kobayashi
                                     Leslie E. Kobayashi
                                     United States District Judge

**MARTHA JENNIFER CAMP, ET AL. VS. OHANA MILITARY COMMUNITIES, LLC, ET AL**; CV 24-00003 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT FILED NOVEMBER 17, 2023